Billy Frank GROSS *v.* STATE of Arkansas

CR 88-195                                    767 S.W.2d 314

Supreme Court of Arkansas
Opinion delivered April 17, 1989

*Robert A. Newcomb*, for appellant.

*Steve Clark*, Att'y Gen., by: *Ann Purvis*, Asst. Att'y Gen., for appellee.

DARRELL HICKMAN, Justice. Billy Frank Gross was convicted of attempted capital murder and sentenced to fifty years imprisonment. A related charge of felon in possession of a firearm was severed.

Gross argues that a prospective juror should have been stricken for cause, two guns seized pursuant to the arrest should have been excluded, and the capital felony murder statute is unconstitutional. Finding no error, we affirm his conviction.

The charges arose from a disturbance reported at the Gross residence in Little Rock. Officer Kenneth Temple met Lynette Schoenberg and drove to that residence about 3:30 a.m. on March 26, 1988. Officer Kris Bell arrived to assist. The officers knocked on the door several times but received no response. Officer Temple testified that the second time he and Officer Bell went to the door Ms. Schoenberg went with them. She began yelling and finally received a response from inside the residence. She said, "Billy, let my mother out," at which time they heard a man say, "get away from the door or I'm going to blow you away." A shot from inside the home was then fired through the door. The officers identified themselves as police officers. Officer Temple then heard, "you better have a badge." At that time Officer Temple told him, "I do have a badge." The person inside replied, "Well, if you've got a badge, I'm going to f------ kill you."

According to both officers, Gross opened the door and fired shots at Officer Bell, using a silver colored revolver. Officer Bell returned fire. No one was hurt.

Gross was told to come out. Officer Bell saw him come out and then go back inside the house. When he then came out a second time, the police arrested him. Officer Temple found a black revolver when he searched the area. The officers immediately entered the house to see if anyone was hurt during the shooting. They knew that at least Ms. Schoenberg's mother was in the home and that there were several other people reportedly there. Officer J. D. Martin testified that they found two women, a child, and an older white male in the house. No one was injured. A silver colored .22 revolver was found just inside the door by

Officer Martin.

■ The judge refused to excuse potential juror O. L. Plunkett for cause, simply because several of his relatives were either police officers or had been police officers. At one point he also stated that he would believe a police officer over someone else. The appellant peremptorily challenged Plunkett and argues he was forced to accept Fred Meux because he was out of peremptory challenges. Even if the trial judge was wrong in not excusing Plunkett, the test is that the appellant must demonstrate that the juror actually seated should have been struck for cause. *Gardner v. State*, 296 Ark. 41, 754 S.W.2d 518 (1988). Fred Meux stated that "my wife's cousin's relative is on the State Police but I don't get to see him very often." The appellant as much as concedes that he could not challenge Mr. Meux for cause. In *Ross v. Oklahoma*, 108 S.Ct. 2273 (1988), the U. S. Supreme Court said: "So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." We find no error on this point.

■ The appellant also argues the silver colored revolver was inadmissible because Gross had already been arrested and was in custody when the officers entered the house and seized the gun without a search warrant. The police knew there were others in the house and entered to see if anyone was injured; shots had been fired at the house. Under the circumstances the officers were clearly justified, indeed duty bound, to enter the house to check on the well-being of the occupants. The gun was in plain view just inside the door. We agree with the trial court that the officers were justified in seizing the gun since there were exigent circumstances which made their entry lawful.

In *Mincy* v. *Arizona*, 437 U.S. 385 (1978), the court said:

> 'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency' . . . And the police may seize any evidence that is in plain view during the course of their legitimate emergency activities.

*See also Holder* v. *State*, 290 Ark. 458, 721 S.W.2d 614 (1986).

■ The appellant argues that the black revolver was

irrelevant, because the police officers identified the silver revolver as the gun the appellant used when he shot at Officer Bell. However, the black revolver explained the number of shots fired. The officers testified that one shot was fired through the door and two shots fired at Officer Bell. There was also testimony another occupant of the house had also fired a gun that evening. When the officers checked the guns, they found two shots had been fired from the silver revolver and two from the black revolver.

The appellant claims the capital murder statute, which singles out the attempt to kill or the killing of a policeman or judge, and certain other public officials, is unconstitutional because it is special legislation in violation of Amendment 14 of the Arkansas Constitution. We answered this argument in *Swindler* v. *State*, 264 Ark. 107, 569 S.W.2d 120 (1978). Nor is Ark. Code Ann. § 5-3-201 unconstitutionally vague because it allows the prosecution to elect to charge one with this crime or aggravated assault. *United States* v. *Batchelder*, 442 U.S. 114 (1979).

Affirmed.