442 U.S. 114 (1979)
UNITED STATES
v.
BATCHELDER.
No. 78-776.
Supreme Court of United States.
Argued April 18, 1979.
Decided June 4, 1979.
CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT.
*115 Andrew J. Levander argued the cause for the United States pro hac vice. With him on the brief were Solicitor General McCree, Assistant Attorney General Heymann, Deputy Solicitor General Frey, Sidney Glazer, and Frank J. Marine.
Charles A. Bellows argued the cause for respondent. With him on the brief were Jason E. Bellows and Carole K. Bellows.
MR. JUSTICE MARSHALL delivered the opinion of the Court.
At issue in this case are two overlapping provisions of the Omnibus Crime Control and Safe Streets Act of 1968 (Omnibus *116 Act).[1] Both prohibit convicted felons from receiving firearms, but each authorizes different maximum penalties. We must determine whether a defendant convicted of the offense carrying the greater penalty may be sentenced only under the more lenient provision when his conduct violates both statutes.

I
Respondent, a previously convicted felon, was found guilty of receiving a firearm that had traveled in interstate commerce, in violation of 18 U. S. C. § 922 (h).[2] The District Court sentenced him under 18 U. S. C. § 924 (a) to five years' imprisonment, the maximum term authorized for violation of § 922 (h).[3]
The Court of Appeals affirmed the conviction but, by a divided vote, remanded for resentencing. 581 F. 2d 626 (CA7 1978). The majority recognized that respondent had been indicted and convicted under § 922 (h) and that § 924 (a) permits five years' imprisonment for such violations. 581 F. 2d, at 629. However, noting that the substantive elements *117 of § 922 (h) and 18 U. S. C. App. § 1202 (a) are identical as applied to a convicted felon who unlawfully receives a firearm, the court interpreted the Omnibus Act to allow no more than the 2-year maximum sentence provided by § 1202 (a). 581 F. 2d, at 629.[4] In so holding, the Court of Appeals relied on three principles of statutory construction. Because, in its view, the "arguably contradict[ory]" penalty provisions for similar conduct and the "inconclusive" legislative history raised doubt whether Congress had intended the two penalty provisions to co-exist, the court first applied the doctrine that ambiguities in criminal legislation are to be resolved in favor of the defendant. Id., at 630. Second, the court determined that since § 1202 (a) was "Congress' last word on the issue of penalty," it may have implicitly repealed the punishment provisions of § 924 (a). 581 F. 2d, at 630. Acknowledging that the "first two principles cannot be applied to these facts without some difficulty," the majority also invoked the maxim that a court should, if possible, interpret a statute to avoid constitutional questions. Id., at 630-631. Here, the court reasoned, the "prosecutor's power to select one of two statutes that are identical except for their penalty provisions" implicated "important constitutional protections." Id., at 631.
*118 The dissent found no basis in the Omnibus Act or its legislative history for engrafting the penalty provisions of § 1202 (a) onto §§ 922 (h) and 924 (a). 581 F. 2d, at 638-639. Relying on "the long line of cases . . . which hold that where an act may violate more than one criminal statute, the government may elect to prosecute under either, even if [the] defendant risks the harsher penalty, so long as the prosecutor does not discriminate against any class of defendants," the dissent further concluded that the statutory scheme was constitutional. Id., at 637.
We granted certiorari, 439 U. S. 1066 (1979), and now reverse the judgment vacating respondent's 5-year prison sentence.

II
This Court has previously noted the partial redundancy of §§ 922 (h) and 1202 (a), both as to the conduct they proscribe and the individuals they reach. See United States v. Bass, 404 U. S. 336, 341-343, and n. 9 (1971). However, we find nothing in the language, structure, or legislative history of the Omnibus Act to suggest that because of this overlap, a defendant convicted under § 922 (h) may be imprisoned for no more than the maximum term specified in § 1202 (a). As we read the Act, each substantive statute, in conjunction with its own sentencing provision, operates independently of the other.
Section 922 (h), contained in Title IV of the Omnibus Act, prohibits four categories of individuals from receiving "any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." See n. 2, supra. Persons who violate Title IV are subject to the penalties provided by § 924 (a), which authorizes a maximum fine of $5,000 and imprisonment for up to five years. See n. 3, supra. Section 1202 (a), located in Title VII of the Omnibus Act, forbids five categories of individuals from "receiv[ing], possess[ing], or transport[ing] in commerce or affecting commerce . . . any firearm." This same section authorizes a maximum fine of *119 $10,000 and imprisonment for not more than two years. See n. 4, supra.
While §§ 922 and 1202 (a) both prohibit convicted felons such as petitioner from receiving firearms,[5] each Title unambiguously specifies the penalties available to enforce its substantive proscriptions. Section 924 (a) applies without exception to "[w]hoever violates any provision" of Title IV, and § 922 (h) is patently such a provision. See 18 U. S. C., ch. 44; 82 Stat. 226, 234; S. Rep. No. 1097, 90th Cong., 2d Sess., 20-25, 117 (1968). Similarly, because Title VII's substantive prohibitions and penalties are both enumerated in § 1202, its penalty scheme encompasses only criminal prosecutions brought under that provision. On their face, these statutes thus establish that § 924 (a) alone delimits the appropriate punishment for violations of § 922 (h).
That Congress intended to enact two independent gun control statutes, each fully enforceable on its own terms, is confirmed by the legislative history of the Omnibus Act. Section 922 (h) derived from § 2 (f) of the Federal Firearms Act of *120 1938, 52 Stat. 1251, and § 5 of that Act, 52 Stat. 1252, authorized the same maximum prison term as § 924 (a). Title IV of the Omnibus Act merely recodified with some modification this "carefully constructed package of gun control legislation," which had been in existence for many years. Scarborough v. United States, 431 U. S. 563, 570 (1977); see United States v. Bass, supra, at 343 n. 10; 15 U. S. C. §§ 902, 905 (1964 ed.).
By contrast, Title VII was a "last-minute" floor amendment, "hastily passed, with little discussion, no hearings, and no report." United States v. Bass, supra, at 344, and n. 11; see Scarborough v. United States, supra, at 569-570, and n. 9. And the meager legislative debates involving that amendment demonstrate no intention to alter the terms of Title IV. Immediately before the Senate passed Title VII, Senator Dodd inquired whether it would substitute for Title IV. 114 Cong. Rec. 14774 (1968). Senator Long, the sponsor of the amendment, replied that § 1202 would "take nothing from" but merely "add to" Title IV. 114 Cong. Rec. 14774 (1968). Similarly, although Title VII received only passing mention in House discussions of the bill, Representative Machen made clear that the amendment would "complement. . . the gun-control legislation contained in title IV." Id., at 16286. Had these legislators intended to pre-empt Title IV in cases of overlap, they presumably would not have indicated that the purpose of Title VII was to complement Title IV. See Scarborough v. United States, supra, at 573.[6] *121 These discussions, together with the language and structure of the Omnibus Act, evince Congress' clear understanding that the two Titles would be applied independently.[7]
In construing § 1202 (a) to override the penalties authorized by § 924 (a), the Court of Appeals relied, we believe erroneously, on three principles of statutory interpretation. First, the court invoked the well-established doctrine that ambiguities in criminal statutes must be resolved in favor of lenity. E. g., Rewis v. United States, 401 U. S. 808, 812 (1971); United States v. Bass, 404 U. S., at 347; United States v. Culbert, 435 U. S. 371, 379 (1978); United States v. Naftalin, 441 U. S. 768, 778-779 (1979); Dunn v. United States, ante, at 112-113. Although this principle of construction applies to sentencing as well as substantive provisions, see Simpson v. United States, 435 U. S. 6, 14-15 (1978), in the instant case there is no ambiguity to resolve. Respondent unquestionably violated § 922 (h), and § 924 (a) unquestionably permits five years' imprisonment for such a violation. That § 1202 (a) provides different penalties for essentially the same conduct is no justification for taking liberties with unequivocal statutory *122 language. See Barrett v. United States, 423 U. S. 212, 217 (1976). By its express terms, § 1202 (a) limits its penalty scheme exclusively to convictions obtained under that provision. Where, as here, "Congress has conveyed its purpose clearly, . . . we decline to manufacture ambiguity where none exists." United States v. Culbert, supra, at 379.
Nor can § 1202 (a) be interpreted as implicitly repealing § 924 (a) whenever a defendant's conduct might violate both Titles. For it is "not enough to show that the two statutes produce differing results when applied to the same factual situation." Radzanower v. Touche Ross & Co., 426 U. S. 148, 155 (1976). Rather, the legislative intent to repeal must be manifest in the "`positive repugnancy between the provisions.'" United States v. Borden Co., 308 U. S. 188, 199 (1939). In this case, however, the penalty provisions are fully capable of coexisting because they apply to convictions under different statutes.
Finally, the maxim that statutes should be construed to avoid constitutional questions offers no assistance here. This "`cardinal principle' of statutory construction . . . is appropriate only when [an alternative interpretation] is `fairly possible'" from the language of the statute. Swain v. Pressley, 430 U. S. 372, 378 n. 11 (1977); see Crowell v. Benson, 285 U. S. 22, 62 (1932); United States v. Sullivan, 332 U. S. 689, 693 (1948); Shapiro v. United States, 335 U. S. 1, 31 (1948). We simply are unable to discern any basis in the Omnibus Act for reading the term "five" in § 924 (a) to mean "two."

III
In resolving the statutory question, the majority below expressed "serious doubts about the constitutionality of two statutes that provide different penalties for identical conduct." 581 F. 2d, at 633-634 (footnote omitted). Specifically, the court suggested that the statutes might (1) be void for vagueness, (2) implicate "due process and equal protection interest[s] in avoiding excessive prosecutorial discretion and in *123 obtaining equal justice," and (3) constitute an impermissible delegation of congressional authority. Id., at 631-633. We find no constitutional infirmities.

A
It is a fundamental tenet of due process that "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes." Lanzetta v. New Jersey, 306 U. S. 451, 453 (1939). A criminal statute is therefore invalid if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." United States v. Harriss, 347 U. S. 612, 617 (1954). See Connally v. General Construction Co., 269 U. S. 385, 391-393 (1926); Papachristou v. Jacksonville, 405 U. S. 156, 162 (1972); Dunn v. United States, ante, at 112-113. So too, vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute. See United States v. Evans, 333 U. S. 483 (1948); United States v. Brown, 333 U. S. 18 (1948); cf. Giaccio v. Pennsylvania, 382 U. S. 399 (1966).
The provisions in issue here, however, unambiguously specify the activity proscribed and the penalties available upon conviction. See supra, at 119. That this particular conduct may violate both Titles does not detract from the notice afforded by each. Although the statutes create uncertainty as to which crime may be charged and therefore what penalties may be imposed, they do so to no greater extent than would a single statute authorizing various alternative punishments. So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied.

B
This Court has long recognized that when an act violates more than one criminal statute, the Government may prosecute *124 under either so long as it does not discriminate against any class of defendants. See United States v. Beacon Brass Co., 344 U. S. 43, 45-46 (1952); Rosenberg v. United States, 346 U. S. 273, 294 (1953) (Clark, J., concurring, joined by five Members of the Court); Oyler v. Boles, 368 U. S. 448, 456 (1962); SEC v. National Securities, Inc., 393 U. S. 453, 468 (1969); United States v. Naftalin, 441 U. S., at 778. Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion. See Confiscation Cases, 7 Wall. 454 (1869); United States v. Nixon, 418 U. S. 683, 693 (1974); Bordenkircher v. Hayes, 434 U. S. 357, 364 (1978).
The Court of Appeals acknowledged this "settled rule" allowing prosecutorial choice. 581 F. 2d, at 632. Nevertheless, relying on the dissenting opinion in Berra v. United States, 351 U. S. 131 (1956),[8] the court distinguished overlapping statutes with identical standards of proof from provisions that vary in some particular. 581 F. 2d, at 632-633. In the court's view, when two statutes prohibit "exactly the same conduct," the prosecutor's "selection of which of two penalties to apply" would be "unfettered." Id., at 633, and n. 11. Because such prosecutorial discretion could produce "unequal justice," the court expressed doubt that this form of legislative redundancy was constitutional. Id., at 631. We find this analysis factually and legally unsound.
Contrary to the Court of Appeals' assertions, a prosecutor's discretion to choose between §§ 922 (h) and 1202 (a) is not *125 "unfettered." Selectivity in the enforcement of criminal laws is, of course, subject to constitutional constraints.[9] And a decision to proceed under § 922 (h) does not empower the Government to predetermine ultimate criminal sanctions. Rather, it merely enables the sentencing judge to impose a longer prison sentence than § 1202 (a) would permit and precludes him from imposing the greater fine authorized by § 1202 (a). More importantly, there is no appreciable difference between the discretion a prosecutor exercises when deciding whether to charge under one of two statutes with different elements and the discretion he exercises when choosing one of two statutes with identical elements. In the former situation, once he determines that the proof will support conviction under either statute, his decision is indistinguishable from the one he faces in the latter context. The prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause. Cf. Rosenberg v. United States, supra, at 294 (Clark, J., concurring); Oyler v. Boles, supra, at 456. Just as a defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution, neither is he entitled to choose the penalty scheme under which he will be sentenced. See U. S. Const., Art. II, §§ 2, 3; 28 U. S. C. §§ 515, 516; United States v. Nixon, supra, at 694.

C
Approaching the problem of prosecutorial discretion from a slightly different perspective, the Court of Appeals postulated that the statutes might impermissibly delegate to the Executive Branch the Legislature's responsibility to fix criminal penalties. *126 See United States v. Hudson, 7 Cranch 32, 34 (1812); United States v. Grimaud, 220 U. S. 506, 516-517, 519 (1911); United States v. Evans, 333 U. S., at 486. We do not agree. The provisions at issue plainly demarcate the range of penalties that prosecutors and judges may seek and impose. In light of that specificity, the power that Congress has delegated to those officials is no broader than the authority they routinely exercise in enforcing the criminal laws. Having informed the courts, prosecutors, and defendants of the permissible punishment alternatives available under each Title, Congress has fulfilled its duty. See United States v. Evans, supra, at 486, 492, 495.
Accordingly, the judgment of the Court of Appeals is
Reversed.
NOTES
[1] 82 Stat. 197.
[2] In pertinent part, 18 U. S. C. § 922 (h) provides:

"It shall be unlawful for any person
"(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
"(2) who is a fugitive from justice;
"(3) who is an unlawful user of or addicted to marihuana or any depressant or stimulant drug . . . or narcotic drug . . . ; or
"(4) who has been adjudicated as a mental defective or who has been committed to any mental institution;
"to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."
[3] Title 18 U. S. C. § 924 (a) provides in relevant part:

"Whoever violates any provision of this chapter . . . shall be fined not more than $5,000, or imprisoned not more than five years, or both, and shall become eligible for parole as the Board of Parole shall determine."
[4] Section 1202 (a) states:

"Any person who
"(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, or
"(2) has been discharged from the Armed Forces under dishonorable conditions, or
"(3) has been adjudged by a court of the United States or of a State or any political subdivision thereof of being mentally incompetent, or
"(4) having been a citizen of the United States has renounced his citizenship, or
"(5) being an alien is illegally or unlawfully in the United States, "and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both." 18 U. S. C. App. § 1202 (a).
[5] Even in the case of convicted felons, however, the two statutes are not coextensive. For example, Title VII defines a felony as

"any offense punishable by imprisonment for a term exceeding one year, but does not include any offense (other than one involving a firearm or explosive) classified as a misdemeanor under the laws of a State and punishable by a term of imprisonment of two years or less." 18 U. S. C. App. § 1202 (c) (2).
Under Title IV, "a crime punishable by imprisonment for a term exceeding one year," 18 U. S. C. § 922 (h) (1), excludes
"(A) any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices . . . , or
"(B) any State offense (other than one involving a firearm or explosive) classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." 18 U. S. C. § 921 (a) (20).
In addition, the Commerce Clause elements of §§ 922 (h) and 1202 (a) may vary slightly. See Barrett v. United States, 423 U. S. 212 (1976); Scarborough v. United States, 431 U. S. 563, 571-572 (1977).
[6] Four months after enacting the Omnibus Act, the same Congress amended and re-enacted Titles IV and VII as part of the Gun Control Act of 1968. 82 Stat. 1213. This latter Act also treats the provisions of Titles IV and VII as independent and self-contained. Title I of the Gun Control Act amended Title IV, compare 82 Stat. 225 with 82 Stat. 1214, and Title III of the Gun Control Act amended Title VII. Compare 82 Stat. 236 with 82 Stat. 1236. The accompanying legislative Reports nowhere indicate that the sentencing scheme of § 1202 (a) was to govern convictions under § 922. See H. R. Conf. Rep. No. 1956, 90th Cong., 2d Sess., 31, 34 (1968); S. Rep. No. 1501, 90th Cong., 2d Sess., 21, 37 (1968).
[7] The anomalies created by the Court of Appeals' decision further suggest that Congress must have intended only the penalties specified in § 924 (a) to apply to violations of § 922 (h). For example, a person who received a firearm while under indictment for murder would be subject to five years' imprisonment, since only § 922 (h) includes those under indictment for a felony. 18 U. S. C. § 922 (h) (1). If he received the firearm after his conviction, however, the term of imprisonment could not exceed two years. Similarly, because § 922 (h) alone proscribes receipt of ammunition, a felon who obtained a single bullet could receive a 5-year sentence, while receipt of a firearm would be punishable by no more than two years' imprisonment under § 1202 (a). In addition, the Court of Appeals' analysis leaves uncertain the result that would obtain if a sentencing judge wished to impose a maximum prison sentence and a maximum fine for conduct violative of both Titles. The doctrine of lenity would suggest that the $5,000 maximum of § 924 (a) and the 2-year maximum of § 1202 (a) would apply. However, if the doctrine of implied repeal controls, arguably the $10,000 fine authorized by § 1202 (a) could be imposed for a violation of § 922 (h). See infra, at 122.
[8] Berra involved two tax evasion statutes, which the Court interpreted as proscribing identical conduct. The defendant, who was charged and convicted under the felony provision, argued that the jury should have been instructed on the misdemeanor offense as well. The Court rejected this contention and refused to consider whether the defendant's sentence was invalid because in excess of the maximum authorized by the misdemeanor statute. The dissent urged that permitting the prosecutor to control whether a particular act would be punished as a misdemeanor or a felony raised "serious constitutional questions." 351 U. S., at 139-140.
[9] The Equal Protection Clause prohibits selective enforcement "based upon an unjustifiable standard such as race, religion, or other arbitrary classification." Oyler v. Boles, 368 U. S. 448, 456 (1962). Respondent does not allege that his prosecution was motivated by improper considerations.